**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ISOCARBON CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:26-CV-0108-B** |
| | § | |
| **BASIN ELECTRIC POWER COOPERATIVE,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Two motions are before the Court. The first is Defendant Basin Electric Power Cooperative ("Basin Electric")'s Motion to Dismiss Plaintiff's Amended Complaint for Improper Venue Under Rule 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 11). The second is Plaintiff IsoCarbon Corporation ("IsoCarbon")'s Motion for Leave to File a Sur-reply, or in the Alternative, Motion to Strike the Supplemental Affidavit of Benjamin Hertz (Doc. 16). For the reasons below, the Court **GRANTS in part** Defendant's Motion to the extent that it seeks to transfer this action to the District of North Dakota and **DENIES as moot** Plaintiff's Motion. Accordingly, the Court **ORDERS** that this case be transferred to the United States District Court for the District of North Dakota.

## I.

## BACKGROUND

This case is about a contract dispute between two energy companies. Plaintiff IsoCarbon is an "infrastructure and climate technology company" with its principal place of business in Dallas, Texas. Doc. 9, Am. Compl., ¶¶ 1-2. Defendant Basin Electric is a "power-generation and

transmission" company that provides electricity to customers in multiple states including North Dakota, where the company is headquartered. *Id.* at ¶¶ 3-4.

The parties entered into a series of three contracts whereby IsoCarbon would provide electric power to various access points in North Dakota, and Basin Electric would purchase that electric power at a set price. First, in May 2025, the parties executed the Master Power Purchase and Sales Agreement (the "Master Agreement"). *Id.* at ¶ 8. The Master Agreement required Basin Electric to purchase electricity from IsoCarbon based on terms that would be determined by subsequent confirmation letters. Doc. 9-1, Ex. 1, Master Agreement, §§ 2.1, 2.3, 2.4. The parties then executed two confirmation letters (respectively, the "First and Second Confirmation Letters"). The First Confirmation Letter was executed around the same time as the Master Agreement. Doc. 9, Am. Compl., ¶ 17. The Second Confirmation Letter was executed several months later. *Id.* at ¶ 30. Under the terms of the First and Second Confirmation Letters, IsoCarbon contractually agreed to begin providing electric power to the North Dakota access points sometime after January 1, 2026, until May 31, 2030. *See* Doc. 9-2, Ex. 2, 2-3, 16[1]; Doc. 9-3, Ex. 3, 2-3, 17.

These contracts were not negotiated or executed in person. Instead, both parties negotiated and signed the contracts from their respective offices through telephonic and electronic means: IsoCarbon from its Texas office and Basin Electric from its North Dakota office.[2] Doc. 9, Am. Compl., ¶¶ 10-11, 18-19; Doc. 13, Pl.'s Resp., 2; Doc. 12-1, Ex. A, Aff. of Benjamin Hertz, ¶ 7. Personnel from Basin Electric did not travel to Texas at any point during the process. *See* Doc. 12-

---

[1] For exhibits, the Court cites to the page number of the PDF generated by ECF.

[2] It is unclear whether IsoCarbon negotiated and executed the Second Confirmation Letter from its Dallas office, but IsoCarbon avers that it did in its response to Basin Electric's Motion to Dismiss. Doc. 13, Pl.'s Resp., 2. Accordingly, the Court "accept[s] as true . . . Plaintiff's factual allegations 'and resolve[s] [this] factual conflict[] in Plaintiff's favor.'" *See Snelling Emp., LLC*, 2018 WL 3659067, at *1 (citation omitted).

1, Ex. A, Aff. of Benjamin Hertz, ¶ 7. However, personnel from IsoCarbon traveled to North Dakota at least once to meet Basin Electric employees and conduct site visits for generation sites. *Id.*

In reliance on these contracts, IsoCarbon began to undertake construction of power generation facilities in North Dakota. Doc. 9, Am. Compl., ¶ 41.

In January 2026, Basin Electric sent IsoCarbon a letter (the "Termination Letter") stating that it considered the First and Second Confirmation Letters "null and void" and "therefore terminated" because IsoCarbon allegedly failed to timely satisfy a condition precedent. Doc. 9-5, Ex. 5. The Termination Letter was sent to IsoCarbon's Texas office from Basin Electric's North Dakota office. *Id*; Doc. 12-1, Ex. A, Aff. of Benjamin Hertz, ¶ 8. IsoCarbon responded to the Termination Letter, arguing that Basin Electric's termination was improper and asking Basin Electric to retract its termination. *See* Doc. 9-6, Ex. 6, 1-7. IsoCarbon's response letter was sent to Basin Electric's North Dakota office from IsoCarbon's Texas office. *See* Doc. 12-1, Ex. A, Aff. of Benjamin Hertz, ¶ 9; Doc. 13, Pl.'s Resp., 5.

IsoCarbon subsequently filed this suit in the Northern District of Texas seeking declaratory judgment and damages under various contractual and extra-contractual theories: breach of contract for express and implied anticipatory repudiation as well as failure to use commercially reasonable efforts; breach of the implied covenant of good faith and fair dealing; and promissory estoppel. Doc. 9, Am. Compl., ¶¶ 60-134.

After Basin Electric filed a Motion to Dismiss for Improper Venue, Doc. 7, Mot. Dismiss, IsoCarbon filed an Amended Complaint. Doc. 9, Am. Compl. Basin Electric subsequently filed another Motion to Dismiss for Improper Venue, arguing that the amendments did not cure the deficiency as to venue. Doc. 11, Mot. Dismiss. In support of the Motion, Basin Electric provided a

signed affidavit by Benjamin Hertz, a manager at Basin Electric. Doc. 11-1, Ex. A., Aff. of Benjamin Hertz. IsoCarbon responded, Doc. 13, Resp., and Basin Electric replied and provided a supplemental affidavit by Hertz. Doc. 15, Reply; Doc. 15-1, Ex. B, Suppl. Aff. of Benjamin Hertz.

IsoCarbon then filed a motion seeking leave to file a sur-reply addressing the content of the supplemental affidavit, or in the alternative, asking the Court to strike the supplemental affidavit. Doc. 16, Mot. Basin Electric responded to the motion, Doc. 17, Resp., and IsoCarbon replied. Doc. 18, Reply. The Court considers these two Motions together below.

## II.

## LEGAL STANDARDS

### A. *Dismissal or Transfer Under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).*

"Venue must be proper for each claim that a plaintiff brings against a defendant." *Guajardo v. State Bar of Texas*, 803 F. App'x 750, 755 (5th Cir. 2020). A defendant may move to dismiss or transfer a case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). "Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper." *Snelling Emp., LLC v. Doc Johnson Enters.*, No. 3:18-CV-0521-B, 2018 WL 3659067, at *1 (N.D. Tex. Aug. 2, 2018) (Boyle, J.) (citation omitted). To adjudicate whether venue is proper, "the court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). Under § 1391(b) venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in

which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

When adjudicating whether venue is proper, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citation omitted). However, "the court must accept as true all of Plaintiff's factual allegations 'and resolve all factual conflicts in Plaintiff's favor.'" *Snelling Emp., LLC*, 2018 WL 3659067, at *1 (citation omitted).

*B. Transfer Under 28 U.S.C. § 1404(a).*

Even if venue is proper, "a district court may transfer any civil action to any other district or division where it might have been brought," if the transfer would be convenient for the parties and witnesses as well as in the interest of justice. 28 U.S.C. § 1404(a). The movant seeking transfer bears the burden of establishing these elements. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc).

To determine whether transfer would be convenient and in the interest of justice, courts consider various private and public interest factors. *In re Volkswagen*, 545 F.3d at 315. The movant seeking transfer must "clearly demonstrate" that the balance of the relevant factors weighs in favor of transfer. *Id.*

## III.

## ANALYSIS

The Court first concludes that venue is improper in the Northern District of Texas because a substantial part of the events and omissions giving rise to the claims in this action did not occur

in this district. Next, it concludes that venue is proper in the District of North Dakota, and transfer to the District of North Dakota—rather than dismissal—is in the interest of justice under § 1406(a). Finally, the Court explains that it need not determine whether transfer would be appropriate under § 1404(a) or whether it should provide leave for IsoCarbon to file a sur-reply.

A. *Venue is Improper in the Northern District of Texas.*

IsoCarbon argues that venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events and omissions giving rise to the claims in this action . . . occurred in the Northern District of Texas." Doc. 9, Am. Compl., ¶ 6. In support, IsoCarbon identifies the following connections between its claims and its chosen venue: First, it negotiated, finalized, and executed the Master Agreement and First Confirmation Letter from its Dallas office. *Id.* at ¶¶ 10-11, 18-19. Second, under the terms of the relevant agreements, IsoCarbon was to receive notices relating to the agreements at its Dallas office. *Id.* at ¶ 16. Third, IsoCarbon received the Termination Letter at its Dallas office and sent its response to the Termination Letter from the same office. *Id.* at ¶¶ 56-57. Finally, IsoCarbon made all business decisions regarding performance from its Dallas office and, when Basin Electric repudiated, suffered financial injury in Dallas. *Id.* at ¶¶, 41-43.

In response, Basin Electric argues that these connections do not render venue proper in the Northern District of Texas. The Court agrees.

"Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008). "[T]he Fifth Circuit has not spoken directly on how broadly the court should view the events giving rise to the claim when determining whether venue

is proper." *Dutra Grp. v. Nat'l Lab. Rels. Bd.*, No. 1:25-CV-90, 2025 WL 2470079, at *5 (E.D. Tex. Aug. 27, 2025). However, "in a breach of contract case, the [three] factors relevant to a venue analysis include the location(s) of negotiation, performance, and breach of the agreement." *Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3:15-CV-3797-B, 2016 WL 1357742, at *2 (N.D. Tex. Apr. 5, 2016) (Boyle, J.) (citation omitted).

In *Wolf*, this Court concluded that venue was improper in the Northern District of Texas because performance and breach occurred in a different state. 2016 WL 1357742, at *3. *Wolf* involved a dispute over an alleged contract between the plaintiff and defendants, where the plaintiff was to recruit payors for the defendants' services in exchange for a percentage of the generated revenues. *Id.* at *1. Although the defendants were Florida citizens, the plaintiff brought suit in Dallas, Texas. *Id.* at *1-2. The Court considered the location of negotiation, performance, and breach (the "*Wolf* factors") to determine whether venue was proper in this district. *Id.* at *3.

First, the Court accepted the plaintiff's evidence that negotiations physically occurred in Texas. *Id.* Next, the Court reasoned that the place of performance was Florida because, under the terms of the contract, defendants "expected [Plaintiff] to direct its [recruiting] services toward Florida." *Id.* While the plaintiff provided evidence that it also recruited some customers in Texas, the Court explained that "the fact that [plaintiff] may have been *permitted* to perform its obligations elsewhere is not the same as saying that it was *required* to do so." *Id.* (emphasis in original). Third, the Court concluded that the breach occurred in Florida because defendants were located in Florida and their refusal to pay plaintiff in accordance with the alleged contract occurred in Florida. *Id.* at *3.[3] Ultimately, the Court held that venue was improper in the Northern District of Texas because

[3] This Court's analysis on the location of breach was colored by the fact that the plaintiff was "seek[ing]

only the first factor—location of negotiation—favored the district. *Id.*

By contrast, in *Snelling Employment, LLC*, this Court concluded that venue was proper in the Northern District of Texas when two of the *Wolf* factors—location of negotiation and performance—favored the district. 2018 WL 3659067, at *3. *Snelling* involved a contract between two companies where the plaintiff agreed to provide the defendant with employees in exchange for payment. *Id.* at *1. The plaintiff company was headquartered in Dallas, Texas, but it provided employees to the defendant in California. *Id.* at *1. When analyzing whether venue was proper, this Court first noted that the contract was partly negotiated in Dallas because "negotiations took the form of telephone and email communications originating from [the plaintiff's] corporate office in Dallas." *Id.* at *3 (citation omitted). Second, as to performance, the Court noted that the plaintiff "claim[ed] it at least partially performed the contract in Dallas." *Id.* Third, as to breach, the Court declined to decide where the breach occurred because the two other factors already weighed in favor of concluding that venue was proper in the Northern District of Texas. *Id.*

These prior cases illustrate that venue may be *improper* in a district even if one of the relevant factors favors that district. *See Wolf*, 2016 WL 1357742, at *3. And venue may be *proper* in a district when two factors favor that district. *See Snelling Employee, LLC*, 2018 WL 3659067, at *3. While the three *Wolf* factors provide a helpful heuristic for analyzing the propriety of venue, the ultimate inquiry is whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular district. 28 U.S.C. § 1391(b)(2). With this statutory language in mind and the Court's

damages for conversion and other similar claims," and "[u]nlike breach claims, the venue analysis for conversion claims focuses on where the conversion occurred." *Id.* at *2. The Court concluded that the conversion occurred in Florida because plaintiff's claims were based on the allegation that the Florida-based defendants were "withholding money" in Florida . *Id.*

prior cases as guideposts, the Court considers whether venue is proper in the Northern District of Texas.

1. The Contracts Were Partly Negotiated in Texas.

Negotiations took place by email and telephone, and both parties communicated from their respective offices: IsoCarbon from its Dallas office and Basin Electric from its Bismark office. Doc. 9, Am. Compl., ¶¶ 10-11, 18-19; Doc. 13, Pl.'s Resp., 2; Doc. 12-1, Ex. 1, Aff. of Benjamin Hertz, ¶ 7. With respect to this factor, this case is unlike *Wolf* because no in-person negotiations occurred in Dallas. *See* 2016 WL 1357742, at *3. Nonetheless, this case is still like *Snelling*, where this Court concluded that negotiations partly occurred in Dallas when the plaintiff conducted their portion of virtual negotiations from Dallas. 2018 WL 3659067, at *3. Therefore, under *Snelling*, this factor weighs in favor of finding venue proper in the Northern District of Texas.

2. The Contracts Required Performance Entirely in North Dakota.

"The place of performance is governed by the terms of the contract." *Tabletop Media, LLC v. Citizen Sys. Am. Corp.*, No. 3:16-CV-1304-C, 2016 WL 11522083, at *3 (N.D. Tex. Sept. 21, 2016) (Cummings, S.J.). Here, under the terms of the contracts, the place of performance was North Dakota: the First and Second Confirmation Letters required IsoCarbon to provide electric energy to various delivery points in North Dakota. *See* Doc. 9-2, Ex. 2, 2-3, 16; Doc. 9-3, Ex. 3, 2-3, 17. With respect to this factor, then, this case is more like *Wolf* than *Snelling* because the contract "required" performance in another venue and IsoCarbon "expected to direct its services toward [that venue]." *See Wolf*, 2016 WL 1357742, at *3. There is uncontroverted evidence that personnel from IsoCarbon traveled to North Dakota to meet Basin Electric's employees and visit potential generation sites. Doc. 12-1, Ex. 1, Aff. of Benjamin Hertz, ¶ 7. But personnel from Basin Electric have not traveled

to Texas in connection with the disputed contracts. Moreover, unlike the plaintiff in *Snelling*, IsoCarbon does not allege that they partially performed the contract in Dallas. Therefore, because the contract was to be performed entirely outside of Texas,[4] this factor weighs in favor of concluding that venue is improper in the Northern District of Texas.

3. The Breach Occurred in North Dakota.

Third, parties dispute where the alleged breach occurred. IsoCarbon argues that the breach occurred in Dallas because "Basin Electric sent its termination letter to IsoCarbon's Dallas offices, and IsoCarbon received that breach in Dallas." Doc. 13, Pl.'s Resp., 5. By contrast, Basin Electric argues that the breach occurred in North Dakota because the Termination Letter was "sent from Basin Electric's office in Bismarck, North Dakota" and so the act "occurred in North Dakota, not Texas." Doc. 12, Def.'s Mem. Mot., 8. Basin Electric also argues that the receipt of a letter in a particular state is not sufficient to establish venue in that state. *Id.*[5]

The Court agrees with Basin Electric. The breach in this case occurred in North Dakota, and the fact that IsoCarbon received the Termination Letter in Texas does not render venue proper in Texas. This conclusion is supported by the general principle that the focus of the venue analysis

---

[4] The Court addresses in Subsection III(A)(3) Plaintiff's argument that Basin Electric partially performed the contract in Dallas because Basin Electric was required to send communications to Plaintiff's Dallas office. In sum, courts generally conclude that the mailing of communications is not enough to establish venue or performance in a district. *See Victory Renewables, LLC v. Energy Trading Co., LLC*, No. 3:18-CV-00456-L-BT, 2019 WL 2539209, at *1 (N.D. Tex. Feb. 8, 2019) (Rutherford, M.J.) (holding that performance did not occur in Texas when the record "establish[ed] only that [the defendant] was obligated to send payments to [the plaintiff] in Texas").

[5] Additionally, Defendant cites *Wolf* for the proposition that breach occurs in the state where the defendant who is allegedly refusing to make payments in connection with a contract resides. Doc. 12, Def.'s Mem. Mot., 8. But, as noted above, the plaintiff in that case was "seek[ing] damages for conversion and other similar claims," and [u]nlike breach claims, the venue analysis for conversion claims focuses on where the conversion occurred." *Wolf*, 2016 WL 1357742, at *2. By contrast, here, Plaintiff does not bring a conversion claim, so it would be a mistake to apply *Wolf*'s breach analysis to Plaintiff's breach of contract claims.

under § 1391(b)(2) is the defendant's conduct, the language of IsoCarbon's Amended Complaint, the established principle that receipt of communications is insufficient to establish venue, and the policy concerns that underpin limitations on venue.

Although "the Fifth Circuit has not decided whether the assessment of transactional venue under 28 U.S.C. § 1391(b)(2) should consider plaintiffs' activities, or only defendants' . . . many district courts in the Fifth Circuit have held that the focus is on the actions or omissions of defendants." *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enters., Inc.*, No. SA-18-CV-820-XR, 2018 WL 6050603, at *10 (W.D. Tex. Nov. 19, 2018); *e.g.*, *Turentine v. FC Lebanon II LLC*, No. 3:22-CV-01625-M, 2022 WL 16951647, at *2 (N.D. Tex. Nov. 15, 2022) (Lynn, J.) ("[I]n determining whether or not venue is proper, the Court looks to the defendant's conduct[ ] and where that conduct took place." (citation omitted)); *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) ("Actions taken by a plaintiff do not support venue." (citation omitted)); *see also Woodke v. Dahm*, 70 F.3d 983, 985–86 (8th Cir. 1995) ("We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (citing *Woodke* and agreeing with its rationale); *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460 (S.D. Tex. 1996) (same).

The Court finds these cases persuasive, but it does not adopt the position that a plaintiff's conduct is *never* relevant to the venue analysis. Instead, the Court accepts that, as a general principle, the *focus* of the venue analysis is on the defendant's conduct. Indeed, IsoCarbon's allegations of breach in its Amended Complaint are centered around Basin Electric's action and inaction. For instance, IsoCarbon pleads that "[b]y sending the [termination] letter . . . Basin Electric breached its

contractual obligation." Doc. 9, Am. Compl., ¶ 113. IsoCarbon's own language indicates that the conduct which allegedly constitutes breach is Basin Electric's act of *sending* the Termination Letter, not IsoCarbon's *receipt* of that letter. IsoCarbon also alleges that "Basin Electric did not make any efforts to communicate with IsoCarbon . . . before it sent the [Termination Letter]," Basin Electric failed to "retract its impermissible termination," and that this conduct amounts to a failure to act in a commercially reasonable manner. *See id.* ¶¶ 108, 112, 116. Again, IsoCarbon's description of the alleged breach emphasizes Basin Electric's conduct: Basin Electric's *failure* to make communications and *failure* to retract the termination.

Overall, when describing the alleged breaches, the language of IsoCarbon's Amended Complaint focuses on Basin Electric's acts and omissions. And Basin Electrics acts and omissions—sending the Termination Letter, failing to send communications, and failing to retract the termination Letter—occurred in North Dakota because these communications where sent (or failed to be sent) from North Dakota, where Basin Electric is headquartered. Therefore, because all of Basin Electric's acts and omissions which allegedly constitute breach occurred in North Dakota, the Court concludes that the breach occurred in North Dakota.

This conclusion is supported by the principle that the receipt of communications or payment in a particular location is generally insufficient to establish venue in that location. *See Victory Renewables, LLC v. Energy Trading Co., LLC*, No. 3:18-CV-00456-L-BT, 2019 WL 2539209, at *1 (N.D. Tex. Feb. 8, 2019) (Rutherford, M.J.) ("[M]ere mailing of payments is not sufficient to establish . . . proper venue." (quoting *Sysinformation, Inc. v. Pro. Healthcare Billing Servs.*, No. A-09-CA-619-SS, 2009 WL 4640272, at *4 (W.D. Tex. Nov. 30, 2009)); *Ranger Steel Servs., L.P. v. Orleans Materials & Equip. Co.*, No. CIV. A. H-09-3111, 2010 WL 173543, at *2 (S.D. Tex. Jan. 14, 2010) (holding that

the "mere obligation to make payments to a Texas resident is not sufficient to establish proper venue" when "there were no events that occurred in Texas except for [the plaintiff company's] employees receiving periodic phone calls or emails [in Texas]"); *Ancel v. Rexford Rand Corp.*, No. 3:93-CV-2379-H, 1994 WL 539287, at *3 (N.D. Tex. Sept. 19, 1994) (Sanders, C.J.) ("Plaintiff's receipt of letters and phone calls in Dallas does not constitute a 'substantial part' of the events and omissions that give rise to his claim.").[6] Accordingly, the mere fact that IsoCarbon received the Termination Letter in Texas is not enough to establish that a substantial part of the events that gave rise to this suit occurred in Texas.

Finally, this holding is consistent with the policy interests that underpin limitations on venue. The Supreme Court has explained that "the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Atl. Marine Const. Co.*, 571 U.S. at 64 n.7 (citation omitted). If the receipt of any communication in a locale were sufficient to establish venue, this protection would be significantly weakened.

The case that IsoCarbon cites—*TIG Insurance Co. v. NAFCO Insurance Co.*, 177 F. Supp. 2d 561 (N.D. Tex. 2001) (Sanders, S.J.)—is distinguishable. In *TIG*, the court concluded that venue was proper in Texas when (1) the plaintiff sent and received communications in Texas during contract negotiations, (2) the reinsurance contracts which were in dispute were "issued" in Texas, and (3) a significant part of the conduct relating to the reinsurance contracts took place in Texas. *Id.* at 567.

[6] Although the Fifth Circuit has held that the "direction of fraudulent misrepresentations alone can be enough to establish venue for a fraud claim where that claim derives from the communications," *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 494 (5th Cir. 2018), Plaintiff does not allege that Defendant made fraudulent misrepresentations and does not bring fraud claims against Defendant. *See id.* at 493 (noting that courts evaluating venue must consider the "distinction between the facts giving rise to the [different] claims pleaded").

In other words, the sending and receiving of communications in the plaintiff's chosen venue was merely one factor among many which rendered venue proper. By contrast, here, the contracts require performance in an entirely different state, and the only connection to the chosen venue is the fact that IsoCarbon exchanged and received communications in Texas.

Ultimately, after considering the three *Wolf* factors, the Court concludes that venue is improper in the Northern District of Texas. Although the relevant contracts were partly negotiated in Dallas, the contract was to be performed entirely outside of Dallas, and the breach occurred outside of Dallas. Therefore, the Court cannot conclude that a substantial part of the events that gave rise to this suit occurred in Dallas. *See Wolf*, 2016 WL 1357742, at *3.

4. The Fact that IsoCarbon Made Investment Decisions from Texas and Suffered Financial Injury is Texas is Inapposite.

IsoCarbon argues that its reliance expenditures "constitute substantial events giving rise to [its] damages claims," and IsoCarbon "made these investment decisions from Dallas, contracted with third-party suppliers . . . from Dallas, and suffered the resulting injury in Dallas when [Defendant] repudiated." Doc. 13, Pl.'s Resp., 6.

The Court disagrees. "If the wrongdoing is committed in one district and the impact of that wrongdoing is felt in another, then transaction[al] venue is *usually* established in the former but not the latter." *Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 2825980, at *10 (N.D. Tex. Sept. 30, 2025) (Kacsmaryk, J.) (emphasis in original) (citation omitted). "[T]he fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." *Bigham*, 123 F. Supp. 2d at 1048. "Focusing on the place of economic harm would mean that venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished by eliminating the

language that stated that the district in which the claim arose was the proper venue." *Tesoro Ref. & Mktg. Co. LLC*, 2018 WL 6050603, at *10 (citing 14D Wright & Miller, FED. PRAC. & PROC. § 3806 (4th ed. 2014)) (other citation omitted); *see Woodke*, 70 F.3d at 985 ("[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly."). As such, "[t]here is a tendency to conclude that suffering economic harm within a district is not by itself sufficient to warrant transactional venue there." *Tesoro Ref. & Mktg. Co. LLC*, 2018 WL 6050603, at *10 (quoting 14D Wright & Miller, FED. PRAC. & PROC. § 3806 (4th ed. 2014)).

The Court finds no reason to depart from this established rule, and the Plaintiffs do not provide any case law to the contrary. The fact that IsoCarbon made and directed business decisions from its Dallas office in reliance of the contracts and suffered financial injury in Dallas does not render venue proper in the Northern District of Texas. Ultimately, a substantial part of the events or omissions giving rise to IsoCarbon's claims did not occur in this district.

B. *Under § 1406(a), Transfer to the District of North Dakota is Appropriate*

If venue is improper, the court may dismiss the suit "or if it be in the interest of justice, transfer [the] case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). Here, the suit could have been brought in the District of North Dakota because Basin Electric resides in North Dakota[7] and a substantial part of the events or omissions giving rise to the claim occurred

[7] "[A]n entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Defendant Basic Electric is an entity with the capacity to sue and be sued in its common name and is subject to the court's personal jurisdiction in North Dakota. This is because Basin Electric has its principal place of business in North Dakota, Doc. 12-1, Ex. A, Aff. of Benjamin Hertz, ¶3, and so is subject to the court's general personal jurisdiction in North Dakota. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) ("A . . . court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." (citation omitted)); *cf. Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alteration in original) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for

in North Dakota. *See* 28 U.S.C. §§ 1391(b)(1)-(2).

"The interest of justice generally requires that the Court transfer the case to the appropriate judicial district rather than dismiss it." *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013) (O'Connor J.) (citation omitted); *see also Wolf Network, LLC*, 2016 WL 1357742, at *3 ("Courts generally prefer transfer to dismissal, and this Court is no different."); *Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 2825980, at *3 (N.D. Tex. Sept. 30, 2025) (Kacsmaryk, J.) ("[I]t is 'well-settled' that courts 'generally prefer transfer to dismissal.'" (citation omitted)).

Applying these principles, the Court concludes that transfer to the District of North Dakota, rather than dismissal, is in the interest of justice because it would "avoid the costs and delay that would likely result from dismissal and refiling." *See Nuttall*, 984 F. Supp. 2d at 646.

C. *The Court Need Not Consider Whether Transfer is Appropriate Under § 1404(a) or Whether to Grant Plaintiff Leave to File a Sur-reply.*

Because the Court orders transfer of the case for improper venue under § 1406(a), it need not consider whether transfer is appropriate under § 1404(a). *See Prosperity Bank v. Balboa Music Festival, LLC*, No. 4:13-CV-00288, 2014 WL 1023935, at *2 (S.D. Tex. Mar. 13, 2014) ("When venue is proper in the court in which the suit was originally filed, 28 U.S.C. § 1404(a) applies."). Moreover, the Court need not—and did not—consider the content of Basin Electric's Supplemental Affidavit, Doc. 15-1, Ex. B, Suppl. Aff. of Benjamin Hertz, as the affidavit only contained information relevant to the § 1404(a) analysis. Accordingly, the Court denies as moot Plaintiff's Motion for Leave to File a Sur-reply or, in the Alternative, Motion to Strike the Supplemental Affidavit of Benjamin Hertz. Doc. 16., Mot. for Leave; *see Yaquinto v. Godwin Gruber, LLP*, No. 3:06-

general jurisdiction.'" (citation omitted)).

CV-02086-P, 2009 WL 10677922, at *11 (N.D. Tex. Jan. 12, 2009) (Solis, J.) (denying as moot motion for leave to file sur-reply when "the outcome of Defendants' summary judgment motion would not be affected" by the content of the sur-reply).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Improper Venue Under Rule 12(b)(3), or in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 11) to the extent that it seeks to transfer this action to the District of North Dakota. The Court **DENIES as moot** Plaintiff's Motion for Leave to File a Sur-reply or, in the Alternative, Motion to Strike the Supplemental Affidavit of Benjamin Hertz (Doc. 16). Finally, the Court **ORDERS** that this case be transferred to the United States District Court for the District of North Dakota.

**SO ORDERED.**

**SIGNED: October 22, 2026.**

**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**